Okay, the next argued case is number 15, 2056, Synopsys, Inc. v. Mentor Graphics Corporation. Mr. Schoenstatt. Good morning, Your Honors, and may it please the Court. This case comes to the Court in a bit of an unusual fashion. We have the Board, or at least one of the judges on the Board, saying to the petitioner, you've left, quote, it up to us to figure out how to combine these things. That's the Joint Appendix, Judge Bisk at A539. And then in the briefing to this Court, you have the petitioner, even though it prevailed, returning the same— Let's talk about the claim here. Let's talk about Claim 1 here, which has an inferring limitation in A and an incorporating limitation in B. We're not arguing about B, right? Correct, Your Honor. We're only arguing about A. And so the question is, what does inferring mean? What do you understand inferring to mean? Well, inferring means, and there's been some discussion in the briefing about claim construction, we're quite content with the construction that the Board issued, which was the plain meaning of the term inferring, which was to, and here I'm quoting, to form an opinion or reach a conclusion through reasoning and information, or, and this was the critical portion of the construction, to convey an idea indirectly. And the idea being, and this was really the— So this would mean detecting, right? Detecting the existence of a resettable memory? Essentially, Your Honor. I mean, the Board suggested a whole series of synonyms that might, as it put it in certain contexts, be a synonym for inferring. But the idea is that you are doing it through indirect information rather than being told directly. So what Vander Zanden doesn't show detecting a memory? I apologize, Your Honor. I didn't hear your question over the cough. Does Vander Zanden show detecting a memory? Now, leave aside resettable for the moment. Does it show detecting a memory? No, our view is that it does not, Your Honor. Why not? That Vander Zanden requires, indeed, it depends upon being told directly what resettable memory to use. If you look at the synthesis comments in Vander Zanden— No, wait, I'm not talking about resettable memory. I'm saying detecting a memory. Any old kind of memory. Right, and I apologize, Your Honor. I misspoke. Vander Zanden to operate relies upon these synthesis comments. Vander Zanden says the synthesis comment is how Vander Zanden is going to figure out what memory, resettable or not. And so if you look at A654 and A656, Vander Zanden is quite explicit in the way it talks about this. At 654, it talks about the requested architectural style. At 656, and this is sort of a summary after the description of the Vander Zanden invention, it says the architecture, quote, selected by the designer. This is exactly the opposite. Wait, what does this have to do with detecting? I mean, there's testimony from the other science expert that Vander Zanden shows detecting a memory, right? Yes, Your Honor. But, and I want to hasten to finish the point, that is not something that the board ever found. And that's really the heart of the decision-making point that I was working my way to. The board's decision in the critical portions, there are two of them at A50 and A44. They are each a single sentence conclusory assertion. You're saying that while there was testimony that Vander Zanden shows inferring or detecting a memory, that the board didn't rely on that testimony, right? Yes, and I would add to that, Your Honor, the board, had it believed that to be true, presumably would have concluded the opposite that it did on this question of anticipation. It's not an argument. You're dicing now the difference between detecting a memory and detecting a resettable memory. I think the way the board looked at this was that Vander Zanden teaches detecting a memory. And the question then would be, would one of ordinary skill in the art have been inclined to incorporate the resettable memory that was in the prior art to Vander Zanden? And there apparently was testimony to the effect that yes, one of ordinary skill would have done that. It's sort of like you go down to your workbench and you're trying to solve a particular type of problem and your patent is working on the same kind of problems that Vander Zanden was working on. So then you say, well, did Vander Zanden detect a memory to use in this process? Answer to the expert, yes. And your inventor has on his work table a shand, which is the very resettable memory that we're talking about. Would they have put the two together? That's what the whole case is all about, right? So Judge Clevenger, let me answer the question. Isn't that what the case is all about? Yes. So if Vander Zanden teaches, which is a question of fact, once there's substantial evidence, if it teaches inferring a memory, just any old kind of memory, and the one of skill in the art had shand there, would they have been inclined to use shand with all of its advantages? In solving these problems. So the answer to that is no. Let me answer it in two parts, because I think that each of them is critical and they each go to these two passages that we were talking about. On this question about whether Vander Zanden infers or detects, if you prefer, the only thing that the board says about this is that A44, and that is the statement that Mentor does not defend to this court. The board, in concluding that there was inferring, in concluding that there was detection, got the thing that does the inferring wrong. It said that it's the downstream circuitry rather than the synthesis tool. And the thing from which the inference is drawn, it also got wrong. And Mentor does not dispute that. And that's really quite telling. So that, Judge Clevenger, is the first part of the answer. But I want to get- At A48, the board says, we determined that Vander Zanden discloses inferring a memory in accordance with our claim construction, but not a resettable memory. So they explicitly said that Vander Zanden discloses inferring a memory. So, Judge Dyke, at A48, and I'll even pile on, at A50 and, again, at A59, in three separate places, the board says we found inferring, but each of them is referring back to that flawed passage on A44 that I was talking about. But, Judge Clevenger, I want to make sure I get to the second part of your question about the workbench. Wait a minute. So what you're saying is they did find that it teaches detecting a memory, but your theory is that somehow the reasoning that underlies that is flawed. Yes, Your Honor, absolutely so. And under settled principles of agency review, going back at least 70 years to Chenery, but a dozen or more of this court's cases, Ariosa, Cutsforth, Warsaw, Lee, Kahn, Thrift, if the reasoning is unsustainable, and the fact that Mentor doesn't defend it tells us that it is, then the only permissible result is to vacate and remand. And what's wrong with their reasoning again? Well, so this passage on A44, this is the only place in which anyone, including the board, says that the final written decision deals with inferring. At least in one state, downstream circuitry would recognize the circuit of figure four as a memory. It is that downstream circuitry, it says, that does the inferring. But it's very clear from column five of the patent that it is the synthesis tool, not the finished circuit that infers. And what does it infer from? The patent, again, column five makes clear it infers from the behavioral description, not from the circuit itself. The circuit isn't looking at itself in a mirror and inferring something from the circuit. The synthesis tool is inferring something. Well, does it have to infer the same way? I'm sorry, Judge Clovenger? Is Van Der Zanden capable of inferring from the downfill? They are doing their recognition from the downstream circuitry, right? No, Your Honor, but what's happening... So they are, in fact, inferring a memory. No, Van Der Zanden, again, and this was the language that I quoted earlier from 654 and 656. The designer is saying, here is the memory to use, and that's the opposite of inferring. Judge Clovenger, I do want to make sure to answer the second part of your question from earlier. You had said that this is the heart of the case, and it is certainly the heart of the second part of the case. And as I say, I want to make sure to answer it. So the reasoning that you laid out is exactly what the board says, again, in this single sentence on A50. Van Der Zanden gives you inferring. Shan gives you a memory. Put them together, and voila, you have inferring a resettable memory. No, it's that there was testimony that someone skilled in the art would know to do that. And that is exactly the thing that is missing from the final written decision. If you look at that passage on A50, that last sentence... Wasn't there testimony in the record to that effect? There was testimony in the record to that effect, and the board didn't... Roll out, cite every piece of testimony that's in the record? Absolutely not, Your Honor. I want to make really clear about... So then come back to what Judge Dike was saying, was that there's testimony in the record that said one of ordinary skilled in the art would have made the combination. The board states that as a conclusion. There's evidence in the record to support it. What else is necessary? What is necessary, and this is the most fundamental thing here as a matter of administrative law or agency law, is that as this court put it in Cutsforth, the decision-maker has to explain why. It has to connect its premises to its conclusions, and the board utterly fails... You say that crossed the league Cutsforth law. I'm sorry, Your Honor? You're saying that the absence of a citation in the board's opinion to this particular testimony crossed the league Cutsforth law? I would put it just a bit differently, Judge Clevenger, because, again, this is not just about a homework requirement. It is that what does appear on the face of the board is an absolutely bare conclusory assertion about this. It doesn't say why we are embracing... If you have a bare conclusory assertion supported by evidence, why is it that sufficient? Because the... So the simple answer, Your Honor, is that this court has said that that's not sufficient. In Warsaw, in Cutsforth, it is not enough to even say, a party argued this and we agree. That is what this court has said, but here we don't even have that. What we have is this statement in the last sentence of A50 where the board doesn't even explain how to bridge the divide between inferring and a resettable memory. Where did you argue below that Vander Zanden doesn't teach inferring and memory as opposed to inferring a resettable memory? So I want to answer... There's a waiver argument here that's being made by your adversary. I looked in the record below and everything I saw you arguing to the board was that Vander Zanden doesn't teach inferring a resettable memory. And that's a different question from whether or not Vander Zanden inferred any old memory and then one of ordinary skill in the art would have grabbed Shan. Right, Judge Clevenger. So let me answer the question, but just to be clear about the structure of the argument here. On A50, we're talking about the second piece, which is to say whether the combination gets you to inferring the existence of a resettable memory, whether you can fill this gap between inferring and resettable memory. The waiver question your honor just asked about is what I've been referring to as the A44 point, just about inferring at all. And on that, it's a couple of things. First of all, it's certainly clear that the board thought that this was an essential part of the case. It talked about it. But the question is, did you argue that? Yes, your honor. Clear. So A399 and A, I think the passage is at 423, there are multiple passages where we're talking about these issues. But if I can just finish that. No, no, no. That kind of vague statement doesn't help. Show us exactly where this was argued since there's a waiver argument. Where did you argue that van der Zanden doesn't show inferring a memory? There is no sentence that says in those words, Judge Dyke,  but it was an essential part of the arguments and everyone understood that to be so. My understanding is the way the petitioner pitched the case from the get-go came in, they were looking at van der Zanden both as an anticipatory reference and also as a 103. And since everybody knows that the limitation in the claim that calls for a resettable memory is a no-brainer because Shan was lying on your patentee's workbench when he wrote the patent. The only question is inferring a resettable memory. And from the get-go, your adversary was saying, well, clearly we think that van der Zanden teaches inferring a memory. And then the only question is, what of ordinary skill would they have been inclined to pick up Shan? And so there's testimony in there. That's the way the case is being presented. And as Judge Dyke pointed out, and you agree, there's evidence in the record where the expert says I would have made that combination. Then why isn't the board's decision saying we agree with all of that sufficient? So where you never argued directly to the board to say that the fault in the argument is that we think that van der Zanden doesn't teach inferring a memory for one reason or another. So I'm into my rebuttal time now, but if I may finish answering. So, I mean, again, there are two separate questions here in your Honor's question. One is about the inferring, sort of inferring in and of itself. And then this separate question about how to bridge the gap between the two things. The reason that inferring was in the case that everyone understood that it was in the case, that it appears all over the board decision. It can be in the case without being an issue. If you didn't raise it, why would the board be concerned about it? That's the problem. You're saying that you can get away with not raising things and the board has to explain everything, even though it wasn't raised. That doesn't seem right, does it? Judge Steik, that is not what we're saying. So the premise of the question you just asked is why you said to me, the board would have to be concerned about this. The board was concerned about this. It's not a counterfactual. It's in at least five different places in the board's decision or four different places. So the board clearly understood it was here. It was so much a part of the case that Mentor put in this extraordinary supplemental expert report at the reply phase that was about this precise issue. And so this was, Judge Clevenger, absolutely part of the argument for the reason that you say. Everyone knew that Shand gives you the resettable memory. And so the critical part is what Van Der Zanden, what work Van Der Zanden is going to do with that. And inferring is a big piece of it. But I fear I still haven't answered your question about the gap filling. And the way you asked the question a moment ago was, if the expert said something about this and if the board said, and you phrased it, I think, deliberately loosely, well, we agree with all of that, then why isn't that enough? The board didn't say, we agree with all of that. If the board had agreed with all of that, it would have found anticipation. It is not an absolute. No, no, no. That's not true, sir, because no one has ever argued, ever argued that Van Der Zanden teaches inferring a resettable memory. Absolutely they have, Your Honor. And it is still all over the red brief to this court. Well, they may be arguing it, that the board didn't rest its decision. The board said, we don't buy that. And that's my point. The board says Van Der Zanden teaches inferring a memory, like a memory called ray, but it does not teach detecting a resettable. But Judge Clevenger, that's exactly the point. If the board had agreed with what you were hypothesizing a moment ago, if the board had agreed with everything their experts said, it would have accepted that anticipation argument. It would have said, all right, fine. Your expert tells us that Van Der Zanden infers the existence of a resettable memory. We're done. And the board squarely rejected that. I don't follow that. I don't follow that. You referred to column five earlier as showing that the premise for the board's inferring a memory was incorrect. Where in column five do I find what you're referring to? So the part of the discussion here about, well, so I apologize, Judge Stech. Let me make sure I understand the question because I think column five shows why the board was correct in its claim construction, which is to say that inferring is an indirect process. What you said was that the board's decision at 44 uses the wrong reasoning for concluding that Van Der Zanden shows inferring a memory. And you say they relied on the downstream circuitry and that they should have relied on the synthesis tool. Where do I find that in column five? So there are two passages on column five, sort of back to back. One begins at around line 33 and follows on at line 45. And that's really the heart of the description of behavioral descriptions and of synthesis. And you'll see in the second paragraph there in particular, it talks about the software design tool automatically inferring the use of resettable memory. It's the design tool that does it, not the circuit that is output on the back end. Okay. Okay, let's hear from the other side. Thank you. Thank you. May it please the court? First, I think I'd like to just clarify. Let's address the last point before we lose it. Okay, what's your answer? They say that the board misunderstood the functioning here of the software and that they said that a downstream circuit can do the inferring, whereas it has to be the design tool. Yes, and that is not a misunderstanding of what's doing the inferring. Right here, the board was addressing the question of whether the particular circuit in van der Zanden was a memory or not. And the terms of the patent say whether something is a memory or not depends on how it's viewed by the downstream circuitry. So in answering that question, the board says the downstream circuitry would see this as a memory. And because van der Zanden synthesizes, at A40, the board had already found, van der Zanden synthesizes memories. It takes memories and processes them separately from the rest of the logic. So given that what is produced in figure four is a memory, it is inferring memories there. So I think the board's understanding of this point is clarified at A48 in its decision, where at the bottom, it clearly states the obviousness argument posed by Mentor. And it says there, Mentor relies on van der Zanden's derivation of a memory circuit. We understand what's doing, it's the process in van der Zanden that derives the memory circuit or detects the memory circuit, as the court has phrased the term. And then we turn to Shan for the disclosure of a resettable memory. And so if that addresses the court's question as to whether the board understood this issue, I'd like to invite the court to the substantial evidence that shows that this combination does, in fact,  which is the sole issue on appeal. In particular, Mr. Detjen's testimony about van der Zanden's steps three and four goes to this. And at A2452, which is paragraph 10 of his reply declaration, Mr. Detjen's testifies that a skilled artisan would understand van der Zanden to teach that because the terminology for describing a resettable memory was so well understood, a skilled artisan would have understood van der Zanden to teach recognizing whether the memory had the characteristic of being resettable. And he provides more detail, he refers back to paragraph six at A2449, where he explains in further detail how this occurs, that a skilled artisan would understand the process to include the writing that occurs upon a reset and identifying the logic equations for the writing that occurs upon a reset. So this is substantial evidence showing that van der Zanden's method, when given the appropriate behavioral description, would infer a resettable memory. And there's no evidence to the contrary, there's no evidence that van der Zanden would not or could not infer a resettable memory if it was given the appropriate description. And that's because Synopsys never argued as much to the board, and which I think brings us to the waiver point, which is my colleague referred to A399 in the record as the location where Synopsys had argued. And this is also in their gravereads, this is the only location, A399, that they point to in their gray brief as saying where they preserved this inferring argument. And A399 is section B of patent owner's response to the board. And there they raise this limitation, but they focus on figure three in van der Zanden, and whether figure three discloses the memory in that particular description is a resettable memory. And if we turn to A400, this focus is made clear. In the middle of the page, they have figure three from van der Zanden, and they say, mentor is correct that figure three is an example of an RTL description, and that a memory can be inferred from this description. Mentor is incorrect, however, that van der Zanden discloses inferring a resettable memory from this code. And the emphasis on figure three and what figure three discloses is made clear at the end of that section at A403, where they state because the HDL code in van der Zanden figure three does not describe the functionality of a resettable memory, van der Zanden does not and cannot disclose the inferring step. Nothing, my colleague was unable to identify anything. He was quite candid. I mean, give him credit for that, saying he never actually pointed and said to the board, they don't teach memory. Yeah, and so what Synopsys has done on appeal is it's abandoned this argument, and it's made several additional arguments as to why van der Zanden would not, why the combination of van der Zanden and Shand would not satisfy this inferring claim limitation step A. But none of those arguments were raised to the board, and so they were waived. And I'd also like to, if there are no other questions on the waiver point, I'd also like to address the adequacy of the board's decision. And I think, especially given the issues that were presented to the board, that decision is more than adequate. It's more than clear. At A50, it finds mentors' position persuasive. And in doing so, it discusses the motivation to combine, set forth by mentors, and it also discusses that skilled artisans knew how to describe resettable memory so well that they would provide this behavioral description of a resettable memory. And then the board also cited to and found persuasive testimony from Mr. Detjen's mentor's expert, specifically paragraphs 10 to 15 of his reply declaration, in which he describes, again, this process for how van der Zanden would infer, and that's at A2451 to 55. So the board found that persuasive, and that more than explains how this inferring process was done. And so because it clearly stated mentors' position, found that position persuasive, and also found the supporting evidence persuasive, this decision is clear and should be affirmed. And I think, moreover, especially given the issues presented by synopsis to the board, no further explanation on the inferring step was needed.  Any more questions? Well, I think that's all I have. Would van der Zanden operate if it couldn't infer a memory? I'm sorry, I didn't hear the question. Would van der Zanden, what van der Zanden is doing, my take, maybe I'm wrong, is that it can't achieve what it's trying to achieve unless it infers a memory. Yeah, the whole point of van der Zanden. It needs a memory. And whether you detect, infer, find, couple, add on, whatever, it's using a memory. Right? Yeah, that's correct. Yeah, I mean, the title of van der Zanden is synthesis of memories. It's not operational without a memory. Yeah, without a behavioral description of a memory, it's not operational. And skilled uttersons knew, were very familiar with resettable memories. Once you get over the hump to say, well, does van der Zanden need a memory? And the inventor is down there trying to make his invention. He's got Shan in his right hand. Yeah, he's got Shan in his right hand. The ordinary skilled person has Shan in his right hand. With all the advantages of Shan, why would you use a Model A memory when you have a Lamborghini? That's correct, yeah. On encountering a resettable memory, Shan is the design. It's right there. That you're going to go with. And the 420 patent, too, doesn't treat resettable memories themselves, or memories really in general, as something special. I mean, resettable memory could be considered like a four-wheel drive car. It's maybe not the only type. There's many other types of cars on the road, but people are familiar with four-wheel drive vehicles, and they know when to use them. Was Shan the first resettable memory, or was it an improvement on previous resettable memories? Shan itself states that there are circumstances where resettable memories are needed. They were in use for a very long time. Mr. Detjens also testified that resettable memories were well-known and well-used, well prior to the 420 patent. And so what Shan was saying, even before the 420 patent, hey, let's come up with a better resettable memory design. And so somebody implementing van der Zanden, and this is how Mr. Detjens put it, he said, it's a no-brainer. I've got my van der Zanden toolbox for dealing with memories. I'm going to put that Shan design into the toolbox and use it when I need it. But while you're here, would you comment on your opponent's position that since this is an administrative agency, there is a heavier burden to explain the reasoning than there might be on a trial judge, for instance? Yeah, and I think in this situation, my opposing counsel cited several cases. I would say this is far from the cases my colleague cited. I mean, this is not power integrations where the board completely ignored the patent owner's proposed claim construction below. This is not Gector, where the board addressed only a single limitation out of many in the claims, nor is it Ariosa, where it's unclear what the board relied on as evidence. Here, it's clear that the board was relying on both the teachings in van der Zanden and Shan, but also it was relying on the evidence from Mr. Detjens. And it's primarily paragraphs 10 to 15 in his reply declaration, but they also did cite to and quote paragraph 36 in his opening declaration, where he sets forth the same reasons in 36E of his opening declaration, which is quoted by the board, I believe at 846, or maybe it's 843. He states, you know, because van der Zanden teaches identifying the characteristics of a memory, and one well-known characteristic was whether the memory was resettable. And so that's the whole reason why a skilled artisan would understand van der Zanden to teach a method that infers resettable memories. And so I think this is more similar to cases like Huston, where it's clear where the board's going here. And, you know, the issues raised by synopsis for the first time on appeal may not be fully addressed, but the issues presented to the board are addressed, and the board laid forth clear reasoning for its obviousness determination. And I might make one further point on those paragraphs 10 to 15. Synopsis has characterized the Detjens reply declaration as some sort of drastic measure, but the board's rules provide for and allow a reply declaration. Synopsis had the right to depose Mr. Detjens after that reply declaration was submitted. They had the right to submit comments on that deposition. And in other instances, parties to a board proceeding have received the right to submit a survey reply based on new expert declarations. So the board instead, synopsis chose to move to exclude Mr. Detjens' declaration and the board on the basis that it raised new theories. And the board rejected that motion to exclude at A59 to 60 explaining, no, Mr. Detjens is just further explaining the obviousness theory first raised by mentor in the petition and raised, for example, at A66, or excuse me, paragraph 66 in his opening declaration. And so the idea that this was something new, synopsis had a chance to respond to Mr. Detjens' reply declaration, and it did not. Any more questions? Thank you, Your Honor. Thank you, Mr. Mason. Judge Clevenger, I want to start with your tool bench again and see if I can get my point across a little more clearly. Even if one takes as a given that van der Zanden discloses inferring memory, that's not the same as inferring resettable memory. And merely because you present someone with a resettable memory doesn't mean you know how to infer that thing. My friend on the other side said that resettable memory is not special. That's not the way the patent viewed things. The patent talks about, and we cite in our opening brief at pages 16 to 18, all manner of different resettable memories. Moreover, the patent itself, at the bottom of column four onto the top of column five, talks about all the different sorts of resets that are going on. You may reset everything to a zero. You may want to reset some values. And so let me suggest an analogy. If someone hands you a cat, all right, you have a cat, just like Shand here has handed you a resettable memory, and you don't know anything about cats. You've just landed from outer space. Inferring a cat, telling someone all the rules for figuring out what makes something a cat aren't self-evident just because someone's handed you the cat. You could say four legs and two eyes, but that would give you a lizard also. You could say four legs and two eyes and fluffy, but that might give you a llama. Inferring something is a lot harder than just being handed the thing. And so this is where the critical... Before we run out of time, your opposite, Mr. Mason, pointed to the sentence at the very bottom of 400, says mentor is correct that figure three is an example of an RTL description and a memory can be inferred from this description. Isn't that an admission that the prior art here shows inferring a memory van der Zanden? Right, so this is only on the inferring point, not inferring a resettable memory. Right, and I think the answer is no. This was not a clear and unequivocal waiver. All that was being said there is this is the kind of code from which a memory could be inferred. It was not meant to be a waiver of one of the key portions of the argument here. But Judge Clevenger on this... You're making an argument now that I think is maybe something that's new. I certainly didn't see any evidence of it below is that there's something very special about inferring a resettable memory as opposed to inferring a old memory. Judge Clevenger, respectfully, that is the heart of the argument. That and that is exactly what's missing on A50. Yeah, but when the argument by their expert below was saying he thought one ordinary skill mirror would have not had any trouble inferring a resettable memory in van der Zanden, then that would have been your time to counter that by saying, well, there are cats who come to the moon from the moon and you see a cat, how many lives does it have? And make that whole argument. That argument wasn't made to the board. So the argument was made and at A50, and this is maybe the most critical thing to leave you with. My friend on the other side says the board accepted what Detjen said on this point. The board accepted Detjen's is filling this gap between what they say is inferring memory in van der Zanden and being handed the shanned resettable memory. The board doesn't say that. When the board says petitioner's position and Dr. Detjen's testimony is persuasive, if you look at what immediately persuades that, it is a statement that is quite different and that was not mentor's argument on this point. There it talks about Oposa describing a resettable memory. That's just writing the behavioral description for shanned. That's not inferring the existence of a resettable memory. And then it talks about Oposa recognizing a resettable memory. Again, it is not Detjen saying I can bridge this gap. That is exactly what is missing from the final written decision. Okay, thank you. Thank you both for cases taken under submission.